THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EVER-ETTE CRITE, Defendant-Appellant.

Second District   No. 2—93—0002

Opinion filed June 1, 1994.—Rehearing denied June 15, 1994.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE PECCARELLI delivered the opinion of the court:

Following a jury trial in the circuit court of Lake County, defendant, Everette Crite, was found guilty of second degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—2 (now 720 ILCS 5/9—2 (West 1992))),

aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2 (now codified, as amended, at 720 ILCS 5/24—1.2 (West 1992))), and unlawful possession of a weapon by a felon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.1(a) (now 720 ILCS 5/24—1.1(a) (West 1992))). Defendant was sentenced to 5 years' imprisonment for possession of a firearm by a felon, 15 years' imprisonment for second degree murder, and 30 years' imprisonment for aggravated battery with a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(a) (now codified, as amended, at 720 ILCS 5/12—4.2(a) (West 1992))).

On appeal defendant contends that: (1) the trial court erred when, subsequent to the jury's finding defendant guilty on the uncharged offense of aggravated discharge of a firearm, the court amended the verdict to reflect a guilty finding on the charged offense of aggravated battery with a firearm, and (2) the trial court erred when it entered judgment on both defendant's conviction of second degree murder and his conviction of aggravated battery with a firearm since both offenses were based upon the same physical act.

The relevant facts, culled from the record, disclose that the defendant was indicted by the grand jury of Lake County on two counts of first degree murder (Ill. Rev. Stat. 1991, ch. 38, pars. 9—1(a)(1), (a)(2) (now 720 ILCS 5/9—1(a)(1), (a)(2) (West 1992))), one count of aggravated battery with a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(a) (now codified, as amended, at 720 ILCS 5/12—4.2(a) (West 1992))), and one count of unlawful possession of a firearm by a felon (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.1(a) (now 720 ILCS 5/24—1.1(a) (West 1992))). The aggravated battery with a firearm count is at issue in the instant case.

Roger Wright, the State's first witness, testified he was a friend of defendant, Everette Crite, and a friend of the decedent, Edward Holden. Wright stated that at approximately 10:30 to 11 p.m. on June 17, 1992, he was with defendant, Darnell Brown, William Crite, Jameela Massie, Samquitta Thompson, and Eleecia Johnson on Liberty Street in Waukegan. At that time, Wright saw Holden.

Wright walked with Massie, Thompson, and Johnson down the street and then returned to where he had seen Holden. Defendant and Holden were involved in an argument over a girl. Wright saw Holden pull up his shirt. Holden told defendant that "he ain't got no pistol." Defendant pulled out a gun. Holden said, "You shoot me, you better kill me."

According to Wright, Holden then grabbed Darnell Brown and pulled Brown to the ground to use him as a shield from defendant. Brown was on top of decedent as they lay on the ground. Holden let go of Brown and then tried to run away from the area. Wright

recalled that defendant first shot his pistol in the air and then fired three or four shots at Holden. Wright turned away and started to run. When he looked back, Holden was on the ground.

Darnell Brown testified that he is the brother of defendant and William Crite. At the time of the occurrence in question he was with defendant, Roger White, and William Crite. It was Brown's testimony that Holden and two men encountered Brown and the other persons. Holden and defendant argued about defendant "messing" with Holden's girlfriend. Holden suddenly grabbed Brown and held Brown in front of him. Brown saw defendant point a gun at Holden and tell Holden to "[l]et my little brother go."

Defendant asked Holden if he had a gun. Holden pulled up his shirt. Brown did not see a gun under the shirt. When William Crite tried to pull Brown away from Holden, Holden and Brown fell to the ground. Crite then succeeded in pulling Brown away from Holden. Brown recalled that Holden got up and started to run away from the scene. Defendant shot once in the air, and, as Holden was running away, continued to shoot the gun. At that time Brown did not see anyone else with a gun.

A forensic pathologist testified that she performed the autopsy of Holden. The pathologist stated that Holden died as a result of a single gunshot wound through the chest and heart.

Defendant testified in his own behalf. Defendant related that he had met Holden twice before June 17, 1992. The first time was about a week before June 17, when he and Holden argued about a female. According to defendant, Holden pulled a gun on defendant at that time and told him to leave the female alone. The second time the two men met was on June 15, when defendant and his brother, William Crite, were in a car, and Holden flagged them down. They stopped. Again, Holden talked about a female and threatened defendant.

The next time defendant saw Holden was on June 17, on Liberty Street. At that time, defendant was with William Crite, Roger Wright, and Darnell Brown. Holden was with two men. Defendant and Holden began arguing. Holden grabbed Darnell Brown, and Wright and William Crite tried to get Holden to let go of Brown. According to defendant, he grabbed a gun from Crite. The gun jammed when he tried to put a bullet in the chamber. As the defendant attempted to unjam the gun, he fired it in the air. Defendant said that Holden and his friends were moving closer to him so he recklessly shot the gun five times into the crowd. Defendant stated that he did not mean to kill anybody. Defendant dropped the gun and ran.

Following deliberations, the jury returned a verdict of guilty of

second degree murder. In addition, the jury signed guilty verdict forms on the charged offense of unlawful use of a weapon by a felon and on the uncharged offense of aggravated discharge of a firearm. The jury had not been provided verdict forms for the charged offense of aggravated battery with a firearm.

Subsequently, on the date scheduled for sentencing the State filed a motion to correct the verdict form for aggravated discharge of a firearm. The State alleged that the jury had reached its decision based on the definition and proposition for the offense of aggravated battery with a firearm and, therefore, the trial court should amend the verdict form to be consistent with the jury's decision. The State's motion was granted over defendant's objection.

Defendant appeals, contending that the trial court erred in amending the jury's verdict to reflect a guilty finding on the charged offense of aggravated battery with a firearm rather than a guilty finding on the uncharged offense of aggravated discharge of a firearm. In response to defendant's contention, the State proposes three arguments. The State asserts that (1) defendant cannot complain of the amendment to the verdict because he tendered verdict forms on aggravated discharge of a firearm, (2) the trial court continued to control the verdict after judgment on the verdict and separation of the jury, and (3) defendant waived the issue of amendment to the verdict by the trial court because he did not raise it in a post-trial motion. Additionally, the State maintains that in changing the verdict form "the court was merely interpreting the verdict and not changing it" and that "[t]he error in the verdict form was a mere typographical error." We disagree.

■ We consider the State's arguments in inverse order. Aggravated discharge of a firearm is a Class 1 felony. (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2(b) (now codified, as amended, at 720 ILCS 5/24—1.2(b) (West 1992)).) The determinate sentence shall be not less than 4 years and not more than 15 years. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(4) (now 730 ILCS 5/5—8—1(a)(4) (West 1992)).) Aggravated battery with a firearm is a Class X felony. (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(b) (now codified, as amended, at 720 ILCS 5/12—4.2(b) (West 1992)).) The determinate sentence shall be not less than 6 years and not more than 30 years. Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3) (now 730 ILCS 5/5—8—1)(a)(3) (West 1992)).

The State argues that the trial court's amendment of the verdict form constituted a "typographical error." A typographical error is "an error in printed or typewritten matter resulting from striking the improper key of a keyboard, from mechanical failure, or the like." (The Random House Dictionary of the English Language 1533

(1983).) The distinction, here, between the aggravated discharge of a firearm and the aggravated battery with a firearm verdict forms resulted from more than an error in mechanics. The difference between the determinate sentence for a Class 1 felony and the determinate sentence for a Class X felony is significant and cannot be justified on the basis of a typographical error, as the State asserts here. Describing the distinction between the two offenses as a "typographical error" deprecates the thought and deliberation by the legislature in making the distinction.

Moreover, the verdict form that had been tendered to the jury was not ambiguous. It was straightforward and needed no interpretation. The change by the trial court of the verdict, finding the defendant guilty of a Class X felony in lieu of the jury's finding the defendant guilty of a Class 1 felony, was more than an act of "merely interpreting the verdict." The court's attempt to interpret a straightforward, unambiguous verdict was an attempt to venture into the minds and deliberations of the jury and its understanding and meaning of its verdict. It was not the trial court's function, nor is it ours, to speculate on the jury's verdict.

The State urges this court to consider the issue of amending the verdict waived on the basis that defendant did not raise the issue in his post-trial motion. The verdict had not been changed from the time the jury tendered it, the court entered judgment thereon, and the jury separated on October 21, 1992. Defendant filed a post-trial motion based on the verdict upon which judgment had been entered. Subsequently, during the hearing on defendant's post-trial motion, the State moved to amend the purported erroneous verdict. Defendant objected to the State's motion. Nevertheless, the trial judge amended the verdict, and argument ensued on the motion for a new trial. The trial court denied the motion for a new trial and sentenced defendant.

Generally, if issues are not preserved by inclusion in a timely filed post-trial motion, any later contentions of alleged error will be deemed to have been waived. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) In *People v. Friesland* (1985), 109 Ill. 2d 369, the court held that waiver applied to the failure of the defendant to assert the issue in a written post-trial motion. The court, in *Friesland,* said:

> "Where grounds for a new trial *are stated in writing,* failure to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review, even if it involves a constitutional right. [Citations].
>
> Exceptions to this rule have been made with regard to the failure to prove a material allegation of an indictment [citation], or

in those instances in which the allegation of error would not normally be expected to be included in the post-trial motion (such as an allegation of ineffective assistance of counsel) [citation], or if a reviewing court elects to take notice of plain errors affecting substantial rights pursuant to our Rule 615(a) (87 Ill. 2d R. 615(a)). [Citation]." (Emphasis in original.) *Friesland*, 109 Ill. 2d at 374-75.

■ The doctrine of plain error may be applied where the evidence is so close that there is a possibility that an error not objected to may have resulted in the conviction of an innocent person or where there are errors of such magnitude that their commission denied the accused a fair and impartial trial. (*People v. Kemblowski* (1992), 227 Ill. App. 3d 758, 762-63.) The allegation of error raised in this case could not have been raised in the written post-trial motion as the issue did not arise until the hearing on the post-trial motion and sentencing when the State filed its motion to correct the verdict form. At that time, defense counsel responded to the State's motion and asked that his objection be incorporated into his post-trial motion. Thus, the defendant did all he could do at that time by objecting to the State's motion, by incorporating his objections into his post-trial motion, and by objecting to the court's amendment of the jury's verdict. In light of these circumstances, we do not believe defendant waived the issue of amending the verdict.

The State maintains that the trial court continued to control the verdict after judgment thereon and separation of the jury. The governing legal principle is that once a verdict has been rendered, accepted by the court, and judgment entered thereon, and the jury has separated, the court has lost control of the verdict, and the only remedies are either a mistrial or some variety of post-trial relief, such as judgment notwithstanding the verdict or a new trial. (*People v. Davis* (1982), 105 Ill. App. 3d 549, 556.) Before judgment is entered on a verdict and before the jury has separated, a trial court may require emendations to the verdict in order that it may truly reflect the finding of the jury. (*People v. Wilson* (1972), 51 Ill. 2d 302, 310.) The State did not offer any timely emendations even though, as discussed below, it had several opportunities to do so. By the time the State did offer its corrections, the trial court had lost control of the verdict.

■ The State alleges that the verdict form in issue was tendered by defendant and, therefore, he should not be heard to complain. The purpose of the conference on the instructions is to afford counsel an opportunity to object or correct any erroneous instructions. (*People v. Underwood* (1978), 72 Ill. 2d 124, 129; *Onderisin v. Elgin, Joliet & Eastern Ry. Co.* (1959), 20 Ill. App. 2d 73, 77-78.) Given such an

opportunity, a party cannot allow the jury to receive an instruction without specific objection and then, for the first time in a post-trial motion or an appeal, claim that error was committed. *Stephenson v. Dreis & Krump Manufacturing Co.* (1981), 101 Ill. App. 3d 380, 387.

The record reflects the trial court instructed the jury on the elements of aggravated battery with a firearm in the State's instruction No. 16 (Illinois Pattern Jury Instructions, Criminal, No. 11.24 (3d ed. 1992) (hereinafter IPI Criminal)), which read in part:

> "To sustain the charge of aggravated battery with a firearm, the State must prove the following propositions:
> *First Proposition*: That the defendant knowingly caused any injury to another; and
> *Second Proposition*: That the defendant did so by discharging a firearm."

The record also reflects that the trial court instructed the jury on the charges against the defendant by giving defendant's instruction No. 1 (IPI Criminal 3d No. 2.01J). That instruction included the charge of aggravated discharge of a firearm. It did not include a charge of aggravated battery with a firearm.

The record further reflects the trial court's concluding instruction to the jury, defendant's instruction No. 10 (IPI Criminal 3d No. 26.01J), read in part:

> "(6) The defendant is also charged with the offense of aggravated discharge of a firearm. You will receive two forms of verdict as to this charge. You will be provided with both a 'not guilty of aggravated discharge of a firearm' and a 'guilty of aggravated discharge of a firearm' verdict."

At the instruction conference, the court stated that defendant's instruction No. 10 was given over the State's objection. The conference on instructions reflects that the State's objection to defendant's instruction No. 10 was with reference to those portions pertaining to the second degree murder and involuntary manslaughter verdict forms. The record is devoid of any objection concerning the verdict forms pertaining to aggravated discharge of a firearm, nor does it show any objection raised by the State when the court read the instruction and the verdict forms to the jury. Also, the State failed to raise any question or objection regarding the issue when the jury was polled.

To preserve for review an argument relating to jury instructions, a party must both object during the instruction conference and set forth his objection to the instruction in a post-trial motion. (*People v. Parson* (1993), 249 Ill. App. 3d 1021, 1032.) The State did neither here. Rather, at the hearing on defendant's post-trial motion the

State filed a motion to amend the verdict form. The State, on appeal, argues that the verdict form, tendered by defendant, given by the court to the jury, rendered by the jury, and affirmed by the jury when it was polled, was incorrect. The State, however, had three opportunities to object to the verdict form. The first opportunity was at the instruction conference. The record discloses the instruction was given over the State's objection. But, the record also discloses that the objection related to instructions on the second degree murder and involuntary manslaughter verdict forms. An objection to an instruction must be sufficiently specific to make clear the nature of the objection. (*Burnham v. Lewis* (1991), 217 Ill. App. 3d 752, 756.) Here, the State's objection was specific; it specifically referred to the second degree murder and involuntary manslaughter verdict forms.

The State's second opportunity occurred when the verdict forms were read to the jury. The record fails to disclose that the State interposed an objection or brought the issue of the impropriety of the aggravated discharge of a firearm verdict form to the attention of the court at that time.

The third opportunity was when the jury was polled and before they separated. Again, the State failed to raise the issue of the improper verdict form.

We conclude that none of the arguments proffered by the State was sufficient to defeat defendant's contention that the trial court erred in changing the jury's verdict on the verdict form in question. In view of our decision on this issue, we need not consider defendant's other issues.

We vacate the court's amended verdict of guilty to the offense of aggravated battery with a firearm and defendant's sentence thereon and remand the cause with direction to the trial court to sentence defendant on the jury's verdict finding defendant guilty of aggravated discharge of a firearm.

Vacated in part; remanded with directions.

QUETSCH and COLWELL, JJ., concur.